**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Marc Amouri Bakambia,  Case No. 24-cv-3653 (LMP/DJF)

      Plaintiff,

v.  **ORDER**

Alexandria Hart, et al.,

      Defendants.

---

This matter is before the Court on Plaintiff Marc Amouri Bakambia's *Motion to Compel Discovery Disclosures; and Motion for Credibility Assessment* (ECF No. 147) ("Motion").[1]  Mr. Bakambia is incarcerated at the Minnesota Department of Corrections' ("DOC") Minnesota Correctional Facility – Lino Lakes ("MCF-Lino Lakes").  Defendants Alexandria Hart, Christine Oberembt, and Corrections Officer Michael Oliveras (collectively, "Defendants") are DOC employees.  Mr. Bakambia's claims stem from events at his previous place of incarceration, Minnesota Correctional Facility – Stillwater ("MCF-Stillwater").  He is suing Ms. Hart[2] and Ms. Oberembt for deliberate indifference to his medical needs because they allegedly delayed the scheduling of a medical appointment with Dr. Todd, a neurologist at the Noran Neurological Clinic, without a justifiable basis for doing so in 2024.  (ECF No. 135 at 17-18.)  He is also suing Officer Oliveras because Officer Oliveras allegedly: (1.) denied Mr. Bakambia access to his prescription migraine medication when Mr. Bakambia tried to collect his property after being released from segregation; and (2.) hid Mr. Bakambia's medication so that other MCF-Stillwater staff could not

---

[1] Mr. Bakambia has filed two additional motions to compel discovery (ECF Nos. 188, 203), which the Court will address separately.

[2] Ms. Hart in her official capacity was substituted for Defendant Kathy Reid in her official capacity pursuant to Fed. R. Civ. P. 25(d) after Ms. Reid passed away during these proceedings.

find it.  (*Id.* at 15-16, 18-19.)

Mr. Bakambia sent documents requests 1-16 and interrogatories 1-11 and 13-21 to Defendants on September 15, 2025.  (ECF No. 171-1.)  Defendants responded to those requests and interrogatories on October 20, 2025.  (ECF No. 148.)  On December 16, 2025 (ECF No. 149) and December 23, 2025 (ECF No. 150), Defendants supplemented their initial responses.  The Motion seeks to compel supplemental or alternative responses to Mr. Bakambia's September 15 discovery requests and asks the Court to "assess the credibility of Defendants, their Counsel, responses to discoveries, including officials who helped responding [sic] to those discoveries."  (ECF No. 162 at 30.)  For the reasons stated below, the Court grants the Motion in part and denies the motion in part.

## I.     Legal Standards

Federal Rule of Civil Procedure 26 governs discovery in federal court, allowing parties to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."  Fed. R. Civ. P. 26(b)(1).  While Rule 26 contemplates liberal disclosure, discovery is not unlimited.  *See, e.g.*, *Hecht v. Pro-Football, Inc.*, 46 F.R.D. 605, 607 (D.D.C. 1969) ("Modern civil procedure in the Federal courts contemplates liberal disclosure … Nevertheless, discovery is not unbridled and not unlimited.").  "The party seeking discovery must satisfy some threshold showing of relevancy before discovery is required."  *Great Am. Ins. Co.*, 2024 WL 6475967, at *4 (citing *Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 380 (8th Cir. 1992)).  "Once that threshold has been met, the resisting party must show specifically how each interrogatory or request for production [or request for admission] is not relevant or how the discovery is overly broad, burdensome, or oppressive."  *Id.* (citation modified).

"As a matter of practical reality, the Court must accept, at face value, a party's representation

---

(ECF No. 106.)

that it has fully produced all materials that are discoverable." *Prokosch v. Catalina Lighting, Inc.*, 193 F.R.D. 633, 637 (D. Minn. 2000) (citation modified). Therefore, if a movant seeks to compel production because he does not believe the non-movant's representation that it has fully produced all discoverable materials, he must support his accusation with "specific evidence" that suggests responsive discoverable materials exist. *Farmers Ins. Exch. v. West*, No. 11-cv-2297 (PAM/JJK), 2012 WL 12894845, at *5 (D. Minn. Sept. 21, 2012). He cannot rely on mere "conjecture and speculation." *Id.*

## II.    Analysis

### A.    Request for Production 1

Request for Production 1 requests "offender property reports" for all inmates who: (1.) were released from segregation on June 11-14, 2026; and (2.) received their property after being released from segregation. (ECF No. 171-1 at 8.) Defendants initially told Mr. Bakambia they had not located any responsive documents, but they would continue to search for them. (ECF No. 148 at 3.) They subsequently supplemented their response and produced the requested documents (ECF No. 149 at 21-35; ECF No. 150 at 4-5). Mr. Bakambia objects to Defendants' response because he believes the report for his own property is not the original authentic copy. His belief is premised on DOC policies that require staff to document excess and confiscated property and to sign their full names at the bottom of the reports. The report Defendants produced for Mr. Bakambia's property lacks any notations or any MCF-Stillwater staff member's signature. (ECF No. 150 at 4-5.) Mr. Bakambia wishes to compel Defendants to produce the original report.

The Court denies Mr. Bakambia's Motion as to Request for Production 1 for two reasons. First, the mere fact that some regulations exist does not necessarily mean that DOC staff follow them at all times. Indeed, the reports Defendants produced for other inmates have inconsistent notations.

(*Compare* ECF No. 149 at 23-24, report with no notations *with id.* at 21-22, 25-35, reports with notations).  Second, Mr. Bakambia did his own search for his offender report through the DOC's internal record request process for inmates, and the report he received is identical to the one produced by Defendants (ECF No. 150 at 5; 153-1, 153 at 7). Therefore, it appears that the only copy of the report that exists is the one produced by Defendants, and Mr. Bakambia proffers no evidence to the contrary.  The Court cannot compel Defendants to produce documents that do not exist.  *See Farmers Ins. Exch.*, 2012 WL 12894845, at \*5 ("Of course, the Court cannot order any party to produce something in discovery that does not, in fact, exist.").

## B.      Request for Production 3

Request for Production 3 requests records produced by Sergeant Mbaya Nyembwe about his attempts to find Mr. Bakambia's Imitrex medication.  (ECF No. 171-1 at 9.)  Defendants responded with boilerplate objections based on vagueness; they also objected based on a Minnesota state law that limits the public disclosure of certain state documents.  (ECF No. 148 at 4.)  Notwithstanding those objections, Defendants further stated that they were unable to locate any responsive documents.  (ECF No. 148 at 4.)  Mr. Bakambia objects to Defendants' response because he believes defense counsel and Defendants "have not done any diligent inquiry to discuss this with Sergeant Nyembwe." (ECF No. 162 at 7.)  His belief is premised on his experience litigating against the DOC and defense counsel in a different unrelated case, when they allegedly made false representations during discovery.

The Court denies the Motion as to Request for Production 3 for several reasons.  First, conclusory allegations concerning alleged actions in other unrelated cases are not evidence that Defendants have failed to make diligent efforts to produce the documents Mr. Bakambia seeks. Second, Mr. Bakambia's objection appears to focus on whether Defendants have interviewed

Sergeant Nyembwe, but Mr. Bakambia requested a production of documents.  It is unclear how a failure to interview a non-party bears any connection to a request for documents.  His objection is therefore incongruent with the nature of the discovery he requests.  *See Kaliher v. North Memorial Health Care*, No. 23-cv-440 (KMM/DLM), 2025 WL 2926891, at *7 (D. Minn. Oct. 15, 2025) ("A request for information is sought via interrogatory, not through a document request.").

### C.      Request for Production 4

Request for Production 4 requests records demonstrating Officer Oliveras did linen exchange on June 12, 2024.  (ECF No. 171-1 at 9.)  Defendants responded with boilerplate objections based on vagueness; they also objected based on a Minnesota state law that limits the public disclosure of certain state documents.  (ECF No. 148 at 4.)  Notwithstanding those objections, Defendants stated they had not located responsive documents, but they subsequently supplemented their response with a log showing linen exchange was conducted on that date.  (ECF No. 149 at 18.)  The log, however, does not state who did the exchange.  Mr. Bakambia objects to Defendants' response on the basis that MCF-Lino Lakes maintains linen exchange logs that allegedly show who conducted the exchange, therefore, MCF-Stillwater must also maintain such a log.  (ECF No. 162 at 9-11; ECF No. 155, MCF- Lino Lakes linen exchange log.)

The Court denies the Motion as to Request for Production 4.  The fact that one correctional facility maintains a particular set of logs does not prove that all correctional facilities use the same logs.  Moreover, the log that Mr. Bakambia produced undermines his argument.  The log has a signature line for the staff member that does the exchange, but it is unsigned.  Even MCF-Lino Lake logs do not necessarily identify the staff member who conducted a particular linen exchange.[3]

---

[3] Mr. Bakambia also states that, if a log is not produced, he will seek to delay any ruling on a motion for summary judgment that Defendants may bring.  Because such a motion is not before the Court, it declines to speculate regarding its merits.

**D.** **Request for Production 5**

Request for Production 5 seeks records in the DOC and Centurion of Minnesota, LLC's ("Centurion") possession regarding the scheduling of follow-up appointments that Dr. Todd requested on June 21, 2023. (ECF No. 171 at 9.) Centurion is a private company that contracts with the DOC to provide medical and psychiatric services to inmates. (ECF No. 152 at 2.) Defendants responded with boilerplate vagueness objections and also objected to the request "to the extent that it seeks documents not in their possession." (ECF No. 148 at 5.) Notwithstanding those objections, they produced several documents concerning Mr. Bakambia's medical treatment at the Noran Neurological Clinic (*id.* at 34-43), a document titled "Off-Site Scheduling Log Entry Form" that records the approval and scheduling of an appointment at the Edina Nura Pain Management Clinic (*id.* at 72-74), and documents concerning Mr. Bakambia's treatment at the Edina Nura Pain Clinic (ECF No. 148 at 105-113). Mr. Bakambia does not believe these documents are responsive to his request, and he demands that Defendants request documents from Centurion because: (1.) the Court previously dismissed his conspiracy claim because the DOC and at its agents are considered a single entity; and (2.) Centurion has a contractual obligation to assist the DOC in any litigation. (ECF No. 162 at 11-16.)

As a threshold matter, the Court disagrees with Mr. Bakambia that the documents Defendants cite are not responsive. These documents show that: (1.) Dr. Todd treated Mr. Bakambia at the Noran Neurological Clinic on June 21, 2023 (ECF No. 148 at 35-42); the clinic referred Mr. Bakambia for a "Pain Clinic Consult" (*id.* at 72); the referral was approved (*id.* at 73); and the Edina Nura Pain Clinic examined Mr. Bakambia and recommended a plan of care (*id.* at 105-13). Though these documents do not show everything that Mr. Bakambia may want to see, that does not mean

they are unresponsive to his request.

As to Mr. Bakambia's demand that Defendants request responsive documents from Centurion, the Court grants the Motion. Mr. Bakambia's first ground for his request is erroneous. Mr. Bakambia's conspiracy claims were dismissed because: (1.) he only made one allegation that was sufficient to infer an agreement existed among three of the defendants; and (2.) that particular group of three defendants consisted entirely of DOC employees, such that Mr. Bakambia's conspiracy claim was legally untenable under the intra-corporate conspiracy doctrine. (ECF No. 77 at 18-20.) The Court did not rule that the intra-corporate conspiracy doctrine applied because non-DOC employees were acting as the DOC's agents.

Mr. Bakambia's second ground for his request is meritorious, however. Under Federal Rule of Civil Procedure 34, documents within the "possession, custody, or control" of a party must be produced if they are relevant and production would not be unduly burdensome. "Control" includes documents that are in the party's actual possession, as well as documents that are in a third party's possession when the "party has the right, authority, or practical ability to obtain" them. *Prokosch v. Catalina Lighting*, 193 F.R.D. 633, 636 (D. Minn. 2000). Centurion's contract with the DOC states that Centurion must provide documents to the DOC when the DOC is a defendant in litigation, regardless of whether Centurion is a party as well.[4] (ECF No. 152 at 19.) Because the DOC has a legal right to obtain documents from Centurion related to Centurion's services under its contract with the DOC, the Court concludes that any documents in Centurion's possession related to such services are within the control of the DOC. *See Rosie D. v. Romney*, 256 F. Supp. 2d 115, 119 (D. Mass. 2003) (stating "control" under Rule 34 "may be established by ... a legal right pursuant to a contractual provision"); *McElgunn v. CUNA Mut. Group*, No. 06-cv-5061 (KES), 2008 WL 271872,

---

[4] This contract was produced by Defendants in response to a discovery request from Mr.

at *2 (D.S.D. July 10, 2008) (same).  Therefore, the Court grants Mr. Bakambia's Motion as to Request for Production 5 and directs the DOC to request any documents Centurion may possess that are responsive to Mr. Bakambia's discovery requests.

### E.    Request for Production 6

Request for Production 6 is nearly identical to Request for Production 5, except it seeks documents in the possession of Noran Neurological Clinic.  (ECF No. 171-1 at 9.)  Defendants raised the same objections and cited the same documents in response to this Request as they did in response to Request for Production 5.  (ECF No. 148 at 5.)  Mr. Bakambia also objects to Defendants' response on the same grounds and argues that the Noran Neurological Clinic is subject to the terms of the DOC's contract with Centurion as a subcontractor.  He points to the contract's provisions concerning subcontractors, which states that it applies "with equal force and effect to all approved subcontractors engaged by the Contractor."  (ECF No. 152 at 20.)  But Mr. Bakambia overlooks another provision of the contract, which excludes "network providers; hospitals and physician groups; specialty, diagnostic and interventional care providers" from the contract's definition of a "subcontractor."  (*Id.*)  Because Noran Neurological Clinic falls within this exception, the Court denies the Motion as to Request for Production 6.

### F.    Request for Production 7

Request for Production 7 requests records showing Dr. Shicker: (1.) approved of Dr. Todd's June 21, 2023 recommendation that Mr. Bakambia receive occipital nerve block injections within three months; and (2.) ordered that the recommended procedure be carried out by a particular deadline.  (ECF No. 171-1 at 10.)  Dr. Shicker is a Centurion employee who was allegedly responsible for approving Mr. Bakambia's medical care.  (ECF No. 1 at 14, 32-33; ECF No. 77 at

---

Bakambia.  (ECF No. 171-2 at 16; ECF No. 152.)

31.)  Defendants raised boilerplate objections related to vagueness and argumentativeness.  (ECF No. 148 at 5.)  Notwithstanding those objections, they produced documents in response to the request.  (*Id.* at 35-42.)  Mr. Bakambia objects to Defendants' response because: (1.) he does not believe the documents they produced and cited are responsive; and (2.) defense counsel allegedly told Mr. Bakambia during a meet-and-confer that he would look to see if he could find other responsive documents.  (ECF No. 162 at 16.)

The Court grants the Motion as to Request for Production 7.  None of the documents Defendants cite appear to show Dr. Shicker approving Dr. Todd's June 21, 2023 recommendation.  The documents include summaries of Dr. Todd's June 21, 2023 medical examination and treatment recommendations.  One of these documents, which was produced twice, states that a Centurion provider reviewed Dr. Todd's recommendation, but it does not clearly identify the reviewing provider; it only contains an illegible signature[5] attesting to the fact that this provider reviewed Dr. Todd's report.  (ECF No. 148 at 35, 39.)  The Court therefore directs Defendants either to produce documents that are responsive to Request for Production 7 or unambiguously state that they have been unable to locate responsive documents after conducting a diligent search.

### G.    Request for Production 8

Request for Production 8 requests all of Mr. Bakambia's medical records from January 2023 to the present, including "all offsite specialty record, imaging, specialist requests, and approval of them, nurse progress notes and provider progress notes, and all communication (verbal, telephone calls, emails, etc.) between Centurion providers and Neurologist regarding [Mr. Bakambia's] care." (ECF No. 171-1 at 10.)  Defendants raised boilerplate vagueness, relevance, and burden objections. They also objected to the request "to the extent that it seeks documents that are not in their

---

[5] Based on a similar signature in a different document in the record, this signature may

possession." Notwithstanding those objections, Defendants produced documents in response to the request. (ECF No. 148 at 27, 33-74, 105-13.) Mr. Bakambia objects to Defendants' response on the ground that their production is incomplete. His objection is premised on: (1.) the absence of medical notes that Mr. Bakambia states should have been generated in response to kites[6] he sent to medical services staff; and (2.) the absence of medical notes by Dr. Craane, a doctor employed by Centurion to provide medical services to prisoners at MCF-Stillwater (ECF No. 77 at 3; ECF No. 1 at 13), from a set of specific dates in 2023. Mr. Bakambia also asserts that defense counsel improperly delayed production of responsive documents by providing him a tranche of over 500 documents in a supplemental production that included several duplicates and records from 2020, 2021, and 2022, which he contends are non-responsive.

The Court denies the Motion as to Request for Production 8. Mr. Bakambia's assertion that medical notes are missing is speculative and conclusory. Mr. Bakambia believes medical notes should have been generated in response to his kites because some of the medical records Defendants produced reference kites he has sent to medical staff, and because DOC policies require staff to make records of their responses to kites. But the mere fact that some medical records reference kites does not mean that every kite necessarily generates a medical record, nor do the policies Mr. Bakambia cites require that responses to kites be medical records. Additionally, the mere existence of DOC policies does not necessarily mean that employees always follow them. The Court also disagrees with the contention that Defendants' production of medical records from 2020, 2021, and 2022 was improper, since Mr. Bakambia specifically requested records about medical appointment scheduling activities during those time periods (ECF No. 171-1 at 11), and in any event, Mr. Bakambia has not shown that any delay resulting from any production of information he did not

belong to Dr. Craane. (*See* ECF No. 148 at 34.)

intend to request unfairly prejudiced him.    Finally, Mr. Bakambia states in conclusory fashion that notes by Dr. Craane are missing for a variety of dates.   He offers no basis to infer that Dr. Craane wrote notes on those dates, and therefore, the Court cannot conclude that Defendants have failed to diligently search for documents in their possession or control.

## H.    Request for Production 9

Request for Production 9 requests records of Mr. Bakambia being scheduled with a medical provider to provide an alternative treatment plan to the one Dr. Todd recommended on June 21, 2023.  (ECF No. 171-1 at 10.)   Defendants stated that they were unable to locate responsive documents, but that they would supplement their production if necessary.  (ECF No. 148 at 6.)  Mr. Bakambia objects to Defendants' response, but his grounds for objection are unclear.  Mr. Bakambia requested a particular set of documents, and Defendants could not find anything responsive to his request.   Defendants cannot be compelled to produce documents that do not exist.   The Court therefore denies the Motion as to Request for Production 9.

## I.    Request for Production 10

Request for Production 10 requests records showing the DOC requested a written notice from Centurion attesting to its failure to comply with Dr. Shicker's order that Mr. Bakambia have a follow-up appointment with a neurologist, as Dr. Todd allegedly requested on June 21, 2023.  (ECF No. 171-1 at 11.)  This request is premised on Mr. Bakambia's assertion that Centurion failed to comply with Dr. Shicker's order and that Centurion's contractual obligations require it to provide the DOC with written notice of compliance failures.  Defendants responded that they were unable to locate responsive documents and disputed Mr. Bakambia's assertion that he did not have the neurologist appointment as Dr. Todd requested.  (ECF No. 148 at 7.)  Mr. Bakambia's objections

---

[6] Kites are written requests or complaints that prisoners can send to various prison staff.

assume the documents he wants exist.  Because Defendants have stated they cannot find any responsive documents and Mr. Bakambia proffers no specific evidence showing that they exist, the Court denies the Motion as to Request for Production 10.

### J.      Request for Production 11

Request for Production 11 requests all "scheduling activities and communications" by Centurion and the DOC concerning his initial appointment with Dr. Todd in 2022 and the reason why it was initially cancelled. (ECF No. 171-1 at 11.)  Defendants raised boilerplate vagueness and relevance objections.  (ECF No. 148 at 7-8.)  Notwithstanding those objections, Defendants produced documents that they claimed were responsive to the request.  These documents include what appears to be an internal communication between medical professionals discussing Mr. Bakambia's initial symptoms.  Defendants also produced an "Off-Site Scheduling Log Entry Form" related to Mr. Bakambia's initial appointment with Dr. Todd.  (ECF No. 148 at 63-65.)  Mr. Bakambia objects to Defendants' response on the ground that none of the produced documents state the reason his appointment was initially cancelled.  (ECF No. 148 at 7-8.)

The Court grants the Motion as to Request for Production 11 insofar as Defendants must inquire with Centurion whether it possesses responsive documents and produce anything resulting from that inquiry.  *See Prokosch*, 193 F.R.D. at 636.  However, the Court disagrees with Mr. Bakambia that Defendants' production to date has not been responsive.  The documents produced by Defendants show the reason why Mr. Bakambia's appointment with Mr. Todd was initially scheduled and include the internal forms the DOC appears to have used to schedule that appointment.  The mere fact that Defendants did not locate documents that provide the exact information Mr. Bakambia seeks is not a ground for compelling production.  Mr. Bakambia also fails to offer compelling evidence that demonstrates Defendants possess the exact documents he seeks.

The Court therefore denies the Motion as to Request for Production 11 insofar as Mr. Bakambia seeks to compel Defendants to produce additional documents that do not exist.

### K.    Request for Production 12

Request for Production 12 seeks the same set of documents that Request for Production 11 seeks, except it asks for documents in the Noran Neurological Clinic's possession.  Defendants raised the same objections and further objected insofar as this request seeks documents not in Defendants' possession or control.  (ECF No. 148 at 8.)  The Court denies the Motion as to Request for Production 12 because, as previously stated, there is no legal basis for the Court to compel Defendants to request documents from the Noran Neurological Clinic.

### L.    Request for Production 13

Request for Production 13 seeks records of any Centurion provider who "suggested that the already approved Neurologist follow-up appointment requested on June 21, 2023" should be cancelled because it was medically unnecessary.  (ECF No. 171-1 at 12.)  Defendants responded with boilerplate objections and stated that they were unable to locate responsive documents and would supplement their response if necessary.  (ECF No. 148 at 8.)  Mr. Bakambia's grounds for objecting to Defendants' response are unclear.  (ECF No. 162 at 20-21.)  The Court takes Defendants at their word and denies the Motion as to Request for Production 13.

### M.    Request for Production 14

Request for Production 14 requests records of all scheduling activities kept by Centurion, the DOC, and the Noran Neurological Clinic regarding follow-up appointments with Mr. Bakambia's neurosurgeon and neurologist as ordered by Dr. Jennifer Brooks on March 21, 2024.  (ECF No. 171-1 at 12.)  Defendants raised boilerplate objections based on vagueness, argumentativeness, and burden.  (ECF No. 148 at 9.)  They also objected to this request insofar as it seeks documents not in

their possession. Defendants produced medical records and more "Off-Site Scheduling Log Entry" forms that detailed the scheduling process for appointments ordered by Dr. Brooks. (ECF No. 148 at 33-62, 66-74.) Mr. Bakambia objects to Defendants' response on the ground that Defendants have not produced documents in the possession of Centurion and the Noran Neurological Clinic. (ECF No. 162 at 21.) For the reasons previously stated, the Court grants the Motion as to Request for Production 14 insofar as Defendants must request responsive documents from Centurion and produce any documents resulting from that inquiry. The Court denies the Motion insofar as Mr. Bakambia seeks documents in the possession of the Noran Neurological Clinic.

### N.    Request for Production 15

Request for Production 15 requests records of "every notification(s) for appointment(s) times" for approved follow-up appointments with Dr. Todd that Centurion sent to the DOC between June 21, 2023 and March 20, 2024. (ECF No. 171-1 at 12-13.) This request is based on a contractual provision in Centurion's contract with the DOC, which requires Centurion to notify DOC staff regarding appointment times with off-site specialty care providers. Defendants responded with boilerplate objections based on vagueness, argumentativeness, and burden. (ECF No. 148 at 10.) They also objected to the request insofar as it seeks documents not in their possession. Notwithstanding these objections, Defendants produced: (1.) medical records from Dr. Todd's June 21, 2023 appointment; and (2.) a Centurion-branded "Consultation and Specialty Services Request Form" that Dr. Craane completed on July 6, 2023. (ECF No. 148 at 34-42.) The form requests a pain clinic consultation for Mr. Bakambia and notes that neurology recommended an occipital nerve ablation. Mr. Bakambia objects to Defendants' response on the ground that the documents produced are not responsive. He also asserts there are responsive documents that Defendants have failed to produce. In support of this assertion, he cites Defendant Oberembt's responses to two kites he sent

in September and November 2023. In her response to the November kite, she stated that Mr. Bakambia's neurology follow-up appointment had been scheduled. (ECF No. 151 at 9.)

The Court grants the Motion as to Request for Production 15. The Court does not agree that Defendants' production is entirely non-responsive, since the Consultation and Specialty Services Request Form may be part of a larger scheduling process. That said, Mr. Bakambia cites specific evidence that his neurology appointment had been scheduled, and there is substantial evidence in the record that the DOC and/or Centurion track the scheduling of these visits using the Off-Site Scheduling Log Entry Form. (*See* ECF No. 148 at 63-74.) Mr. Bakambia thus proffers a basis to infer that the requested scheduling records likely exist. There is nothing in the record indicating Defendants produced any scheduling documents that align with Defendant Oberembt's statement that a neurology follow-up appointment for Mr. Bakambia had been scheduled in November 2023. It is possible that Defendants have not produced those documents because they do not exist. If that is the case, then after conducting a diligent search, Defendants shall notify Mr. Bakambia that they were unable to locate any documents responsive to his request as it relates to Ms. Oberembt's November 2023 statement.

Defendants argue that it is "unclear what additional documents [Mr.] Bakambia seeks given that the follow-up requested on June 21, 2023, occurred on September 8, 2023, and documents reflecting this were produced." (ECF No. 170 at 17.) Though Defendants' factual contention may be true, Mr. Bakambia clarified through meetings with defense counsel that his request included documents corresponding with Ms. Oberembt's November 2023 response to Mr. Bakambia's kite. (ECF No. 151 at 5.) There is no indication that Defendants ever produced documents responsive to that clarified request or informed Mr. Bakambia that no such documents were found. The Court therefore directs Defendants to search diligently for this subset of documents and to produce them or

inform Mr. Bakambia that no such documents were found.

### O.    Interrogatory 1

Interrogatory 1 asks for the names of the corrections officers who: (1.) "called the laundry on Wednesday 6/12/24"; (2.) spoke with Officer Oliveras regarding Mr. Bakambia's migraine medication and other property; and (3.) went to the laundry area. (ECF No. 171-1 at 1-2.) Defendants responded with boilerplate objections based on vagueness, argumentativeness, and relevance. (ECF No. 148 at 14.) Notwithstanding those objections, Defendants stated that after "diligent inquiry," they were unable to identify the staff member or members who "called the laundry on Wednesday 6/12/24." They further stated that discovery was ongoing and that they would supplement their answer if necessary. Mr. Bakambia objects to Defendants' response on the grounds that: (1.) the corrections officer who aided defense counsel is "untrustworthy" based on Mr. Bakambia's experience litigating a different unrelated case; and (2.) documents produced by Defendants prove that Corrections Officer Michelle Atlas, who wrote a report about the incident on June 12, 2024, knows who called the laundry on that day. (ECF NO. 162 at 23-24, citing ECF No. 149 at 14-15.)

The Court denies the Motion as to Interrogatory 1. Mr. Bakambia's first argument is meritless because there is no evidence in the record in this action showing that any corrections officer who may have assisted defense counsel in preparing Defendants' responses is untrustworthy. Mr. Bakambia's second argument fares no better. Though the documents may show that Ms. Atlas had some personal knowledge about the events on June 12, 2024, Mr. Bakambia does not provide any evidence that Defendants failed to seek information from her. Moreover, defense counsel told Mr. Bakambia during a meet-and-confer concerning Mr. Bakambia's discovery requests that answers to Mr. Bakambia's questions may not be obtainable because the individuals who were present have

forgotten the specifics of what occurred.  Given the lack of evidence to show that any DOC official should remember who "called the laundry on Wednesday 6/12/24" and Defendants' representation that they have made a diligent inquiry, the Court cannot compel Defendants to provide more information with respect to Interrogatory 1.

### P.    Interrogatory 3

Interrogatory 3 asks for Officer Oliveras' job description with regard to how he manages prisoners' property when they are escorted to and released from segregation.  (ECF No. 171-1 at 2.) Defendants initially responded by citing documents signed by Officer Oliveras, which list his job responsibilities in broad terms, and stating that "when an incarcerated person is released from segregation, they must pack their property down so that it fits into two property bins."  (ECF No. 148 at 15, 75-83.)  Defendants later supplemented their response with a more detailed explanation of MCF-Stillwater's process for inventorying and then returning prisoner property before and after segregation transfers.  (ECF No. 149 at 7.)  Mr. Bakambia objects to Defendants' response because it fails to explicitly state whether Officer Oliveras' job responsibilities involve the inventorying of prisoner property during the segregation transfer process.  (ECF No. 162 at 24-25.)

The Court grants the Motion as to Interrogatory 3.  The document produced by Defendants state that Officer Oliveras must adhere to established DOC procedures.  (ECF No. 148 at 76.) Though it may be a fair assumption that this duty includes adherence to the property procedures Defendants detailed in their response to Interrogatory 3, Defendants' response relies on inferences without definitively answering the question asked.  Officer Oliveras' property inventory duties are central to Mr. Bakambia's claim against him, and it is clear from his Motion that Mr. Bakambia wants a clear statement of whether Officer Oliveras is required to perform these duties.  Therefore, the Court directs Defendants to provide an unambiguous response specifically addressing Officer

Oliveras's duties with respect to inventorying and returning prisoner property before and after segregation transfers.

### Q.    Interrogatory 7

Interrogatory 7 asks Defendants to state that on Tuesday, June 11, 2024, all inmates released from segregation from 7 A.M. to 2 P.M. were brought to the laundry area where Officer Oliveras works, and that Officer Oliveras returned their property to them. (ECF No. 171-1 at 3.) Defendants responded with boilerplate objections based on vagueness, relevance, and argumentativeness. (ECF No. 148 at 17.) Notwithstanding those objections, Defendants answered, "DOC staff provided property to inmates on June 11, 2024, who were released from segregation in accordance with DOC policies and procedures." Mr. Bakambia objects to this on the ground that Defendants' answer lacks specificity as to Officer Oliveras. (ECF No. 162 at 25-26.)

The Court agrees Defendants must provide an answer that is specific to Officer Oliveras and therefore grants the Motion as to Interrogatory 7. If Defendants are not sure whether Officer Oliveras returned inventoried property to all inmates released from segregation from 7 A.M. to 2 P.M. on June 11, 2024, then they can respond accordingly.

### R.    Interrogatory 8

Interrogatory 8 asks Defendants to state whether, on June 12, 2024, Officer Oliveras: (1.) "did not issue a pass to Mr. Bakambia to report to laundry for his property"; (2.) conducted linen exchange that morning at Mr. Bakambia's living unit; and (3.) told Mr. Bakambia that he would call him down to the laundry area after the end of linen exchange, but ultimately failed to do so. (ECF No. 171-1 at 3-4.) Defendants responded with boilerplate objections based on vagueness and argumentativeness. (ECF No. 148 at 18.) Notwithstanding those objections, Defendants stated that: (1.) Officer Oliveras "has no memory of this specific exchange, but that he was not aware that [Mr.]

Bakambia had medication in his property"; and (2.) "property retrieval was conducted pursuant to DOC policies and procedures."  Mr. Bakambia objects to Defendants' answer because: (1.) the portion of Defendants' answer concerning medication is a non-sequitur; and (2.) Officer Oliveras could not have forgotten the exchange.  (ECF No. 162 at 26.)  Though the Court agrees that the answer's reference to medication appears to be out of place, it cannot compel Officer Oliveras to recount what he allegedly cannot remember.  For this reason, the Court denies the Motion as to Interrogatory 8.

### S.      Interrogatory 10

Interrogatory 10 asks Defendants to state that on June 12, 2024: (1.) Officer Oliveras provided property to prisoners released from segregation after he completed linen exchange; and (2.) Sergeant Nyembwe went to the laundry area to retrieve Mr. Bakambia's prescription medication but could not find it because Officer Oliveras had moved it.  (ECF No. 148 at 18-19.)  Defendants provided boilerplate objections and then gave the same response to Interrogatory 10 as they did to Interrogatory 8, that: (1.) Officer Oliveras "has no memory of this specific exchange, but that he was not aware that [Mr.] Bakambia had medication in his property"; and (2.) "property retrieval was conducted pursuant to DOC policies and procedures."  (ECF No. 148 at 18-19.)  Mr. Bakambia objects to Defendants' response on the ground that Defendants failed to make a diligent inquiry with Sergeant Nyembwe to answer this interrogatory.  (ECF No. 162 at 26.)  Defendants' response omits any mention of Sergeant Nyembwe and only states that Officer Oliveras does not remember the events of June 12.  The Court therefore grants the Motion as to Interrogatory 10 insofar as it asks Defendants to confirm: (1.) whether Sergeant Nyembwe went to the laundry area to retrieve Mr. Bakambia's prescription medication; (2.) whether Sergeant Nyembwe was able to locate the medication; and (3.) if the Sergeant was unable to locate it, whether it was because Officer Oliveras

had moved it.  If Defendants are unable to confirm or deny some or any of this information, they may respond accordingly.

### T.    Interrogatory 12

Mr. Bakambia asks the Court to compel Defendants to produce a copy of his first set of interrogatory requests because he contends he served an Interrogatory 12 on Defendants, while Defendants assert no such interrogatory was served on them.  (ECF No. 162 at 26-27.)  Defendants filed a copy of Mr. Bakambia's interrogatories as an exhibit to their Response to his motion.  (ECF No. 171-1 at 4, showing the interrogatories skip from Interrogatory 11 to Interrogatory 13, and no pages appear to be missing.)  Defendants also filed a certificate of service stating they mailed a copy of the exhibit to Mr. Bakambia on February 26, 2026.  (ECF No. 172.)  Therefore, Defendants have already complied with Mr. Bakambia's demand.

Moreover, evidence in the record shows that Defendants responded to Mr. Bakambia's intended Interrogatory 12 in their responses to his second set of discovery requests on December 22, 2025.  (ECF No. 189 at 14.)  They knew the content of Interrogatory 12 because Mr. Bakambia sent it to them in a November 17, 2025 letter that summarized the meeting he had with defense counsel concerning his first set of discovery requests.  (ECF No. 151 at 1, 7.)  Therefore, not only does Mr. Bakambia appear to be mistaken about his own discovery requests, but his objection makes little sense, since Defendants ultimately responded to it.  For all these reasons, the Court denies Mr. Bakambia's Motion as to Interrogatory 12.

### U.    Interrogatory 15

Interrogatory 15 seeks a description of Ms. Reid and Ms. Oberembt's job duties with regard to providing care to prisoners and coordinating care with offsite specialty service providers.  (ECF No. 171-1 at 5.)  Defendants responded with boilerplate objections based on vagueness, relevance,

and burden.  (ECF No. 148 at 21.)  Notwithstanding those objections, Defendants produced documents signed by Ms. Reid and Ms. Oberembt listing their job responsibilities.  (*Id.* at 84-104.) Mr. Bakambia objects to Defendants' response on the ground that Ms. Oberembt signed the job responsibilities document on August 26, 2024, even though she had been working at MCF-Stillwater for years at that time.  (ECF No. 162 at 28.)

The Court denies the Motion as to Interrogatory 15 for two reasons.  First, the document Mr. Bakambia challenges is plainly responsive as it states that the purpose of Ms. Oberembt's role is to "collaborate and coordinate work with primary specialty consult and referral coordinator to ensure timely entry, follow up and coordination with relation to specialty consult appointments, delivery of nursing and medical services to the incarcerated person population." (ECF No. 148 at 97.)  Second, Mr. Bakambia's request appears to seek information about Ms. Oberembt's ongoing job responsibilities.  Defendants were not required to provide information about her past job responsibilities because Mr. Bakambia did not ask for a historical job description relating to any particular period of time.

## V.      Interrogatory 18

Interrogatory 18 seeks information about the DOC and Centurion's process for tracking scheduling activities for specialty medical services and requests documents related to that process. (ECF No. 171-1 at 6.)  Defendants responded with boilerplate objections related to vagueness and argumentativeness.  (ECF No. 148 at 22.)  Defendants also objected on the ground that it is an interrogatory that "improperly" seeks documents.  Notwithstanding those objections, Defendants stated that "a scheduling log is utilized to track off-site appointments" and cited to copies of the "Off-Site Scheduling Log Entry Form" produced in response to Mr. Bakambia's document requests (*id.* at 63-74).  Mr. Bakambia objects to Defendants' response on the basis that they did not request

documents from Centurion. Mr. Bakambia's objection is that certain documents were not produced, but "[i]nterrogatories are not the appropriate vehicle for seeking the production of documents." *Amin v. Flagstone Hospitality Mgmt. LLC*, No. 03-cv-1181 (JRT/JSM), 2005 WL 8162950, at *7 (D. Minn. Jan. 3, 2005). The Court therefore denies the Motion as to Interrogatory 18.

### W.    Credibility Assessment

Finally, Mr. Bakambia asks the Court to "assess the credibility of Defendants, their counsel, responses to discoveries, including officials who helped responding to those discoveries." (ECF No. 162 at 30.) The Court does not consider the credibility of parties' discovery responses in a motion to compel. *See Ditter v. Nebraska Dep't of Corr. Servs.*, No. , 2018 WL 2184454, at *10 (D. Neb. May 11, 2018) (quoting *Annabel v. Heyns*, 2014 WL 1207802, at *2 (E.D. Mich. Mar. 24, 2014)) ("The purpose of a motion to compel discovery is not to challenge the trustfulness of the response but rather to compel a party to *answer* the interrogatory."); *Hickman v. Silva*, No. C-12-209, 2012 WL 4973041, at *2 (S.D. Tex. Oct. 17, 2012) ("Plaintiff quibbles with the veracity of the response … that is not a basis for a motion to compel."); *Heaton v. U.S. Postal Serv.*, No. 8:06-cv-2, 2007 WL 295609, at *1 (D. Neb. Jan. 29, 2007) ("Plaintiff is merely challenging the factual accuracies of defendant's responses … the court will not resolve factual challenges in a motion to compel."). The Motion is therefore denied insofar as Mr. Bakambia asks the Court to assess the credibility of Defendants' responses to his discovery requests and compel alternative responses. The Motion is also denied insofar as Mr. Bakambia's Motion seeks sanctions. Aside from Mr. Bakambia's conclusory allegations, there is no evidence that defense counsel, Defendants, or any other person associated with this litigation has lied to Mr. Bakambia or the Court.

### ORDER

Based on the foregoing, and on all the files, records, and proceedings here, **IT IS HEREBY**

**ORDERED** that Plaintiff Marc Amouri Bakambia's *Motion to Compel Discovery Disclosures; and Motion for Credibility Assessment* (ECF No. 147) is **GRANTED IN PART** and **DENIED IN PART** as follows:

1. Defendants Alexandria Hart, Christine Oberembt, and Michael Oliveras shall request documents from Centurion of Minnesota, LLC responsive to the following document requests: 5, 11, 14, and 15. If no responsive documents are located, Defendants must provide a statement attesting to that conclusion.

2. Defendants shall conduct a diligent search and produce documents responsive to the following document requests: 7 and 15. If no responsive documents are located, Defendants must provide a statement attesting to that conclusion.

3. Defendants shall provide an unambiguous answer to Interrogatory 3 concerning Officer Oliveras' job responsibilities as they relate to the inventorying of prisoners' property.

4. Defendants shall provide an answer to Interrogatory 7 that states whether Officer Oliveras returned inventoried property to all inmates released from segregation from 7 A.M. to 2 P.M. on June 11, 2024. If Defendants lack an adequate basis to answer, they may respond accordingly.

5. Defendants shall provide an answer to Interrogatory 10 that addresses:

    a. Whether Sergeant Nyembwe went to the laundry area to retrieve Mr. Bakambia's prescription medication;

    b. Whether Sergeant Nyembwe was able to locate the medication; and

    c. If Sergeant Nyembwe was unable to locate the medication, whether it was because Officer Oliveras had moved it.

       d.      If Defendants are unable to confirm or deny some or any of this information, they may respond accordingly.

6.      The Motion is denied in all other respects.

Dated: May 8, 2026

*s/ Dulce J. Foster*
Dulce J. Foster
United States Magistrate Judge