**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Marc Amouri Bakambia,                                          Case No. 24-cv-3653 (LMP/DJF)

        Plaintiff,

v.                                                                                        **ORDER**

Alexandria Hart, et al.,

        Defendants.

This matter is before the Court on Plaintiff Marc Amouri Bakambia's *Second Motion to Compel Discovery Disclosures* (ECF No. 188) ("Second Motion") and *Third Motion to Compel Discovery Disclosures* ("Third Motion") (ECF No. 203) (collectively, "Motions"). Mr. Bakambia is incarcerated at the Minnesota Department of Corrections' ("DOC") Minnesota Correctional Facility – Lino Lakes ("MCF-Lino Lakes"). Defendants Alexandria Hart, Christine Oberembt, and Corrections Officer Michael Oliveras (collectively, "Defendants") are DOC employees. Mr. Bakambia's claims stem from events at his previous place of incarceration, Minnesota Correctional Facility – Stillwater ("MCF-Stillwater"). He is suing Ms. Hart[1] and Ms. Oberembt for deliberate indifference to his medical needs because they allegedly delayed the scheduling of a medical appointment with Dr. Todd, a neurologist at the Noran Neurological Clinic, without a justifiable basis for doing so in 2024. (ECF No. 135 at 17-18.) He is also suing Officer Oliveras because Officer Oliveras allegedly: (1.) denied Mr. Bakambia access to his prescription migraine medication when Mr. Bakambia tried to collect his property after being released from segregation; and (2.) hid Mr. Bakambia's medication so that other MCF-Stillwater staff could not find it. (*Id.* at 15-16, 18-

---

[1] Ms. Hart in her official capacity was substituted for Defendant Kathy Reid in her official capacity pursuant to Fed. R. Civ. P. 25(d) after Ms. Reid passed away during these proceedings.

19.)

The Motions concern Mr. Bakambia's second and third sets of discovery requests to Defendants. (ECF No. 171-1.) Defendants responded to the second set of requests on December 22, 2025 (ECF No. 189 at 1-16) and to the third set of requests on March 16, 2026 (ECF No. 206-1 at 7-11). On February 6, 2026, Defendants attempted to supplement their response to Interrogatory 25, which was part of the second set of discovery requests, by letter. (ECF No. 189 at 33.) During a March 3, 2026 meeting with defense counsel, Mr. Bakambia stated that he was unwilling to accept supplementation by letter and insisted on a supplemental response under oath. (ECF No. 191 at 1.) Defense counsel sent its supplemental response under oath two days later. (ECF No. 189 at 37.) On April 9, 2026, Defendants supplemented their response to Mr. Bakambia's third set of discovery requests. (ECF No. 206-1 at 2-5.) The Motions seek to compel supplemental or alternative responses to some of Mr. Bakambia's discovery requests. (ECF No. 162 at 30; ECF No. 205.) The Third Motion solely concerns Request for Production 25. For the reasons stated below, the Court grants the Second Motion in part and denies it in part, and denies the Third Motion.

## I.      Legal Standards

Federal Rule of Civil Procedure 26 governs discovery in federal court, allowing parties to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). While Rule 26 contemplates liberal disclosure, discovery is not unlimited. *See, e.g.*, *Hecht v. Pro-Football, Inc.*, 46 F.R.D. 605, 607 (D.D.C. 1969) ("Modern civil procedure in the Federal courts contemplates liberal disclosure … Nevertheless, discovery is not unbridled and not unlimited."). "The party seeking discovery must satisfy some threshold showing of relevancy before discovery is required." *Great Am. Ins. Co.*, 2024

---

(ECF No. 106.)

WL 6475967, at *4 (citing *Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 380 (8th Cir. 1992)). "Once that threshold has been met, the resisting party must show specifically how each interrogatory or request for production [or request for admission] is not relevant or how the discovery is overly broad, burdensome, or oppressive." *Id.* (citation modified).

"As a matter of practical reality, the Court must accept, at face value, a party's representation that it has fully produced all materials that are discoverable." *Prokosch v. Catalina Lighting, Inc.*, 193 F.R.D. 633, 637 (D. Minn. 2000) (citation modified). Therefore, if a movant seeks to compel production because he does not believe the non-movant's representation that it has fully produced all discoverable materials, he must support his accusation with "specific evidence" that suggests responsive discoverable materials exist. *Farmers Ins. Exch. v. West*, No. 11-cv-2297 (PAM/JJK), 2012 WL 12894845, at *5 (D. Minn. Sept. 21, 2012). He cannot rely on mere "conjecture and speculation." *Id.*

## II.    Analysis

### A.    Request for Production 18

Request for Production 18 requests an order by Dr. Shicker[2] referenced in two kites[3] Ms. Oberembt sent to Mr. Bakambia concerning approved and scheduled neurologist appointments. (ECF No. 189 at 3.)[4] Request for Production 18 further requests the record of a neurologist consult request ordered on October 1, 2021. Defendants raised boilerplate objections based on vagueness

---

[2] Dr. Shicker is a Centurion employee who was allegedly responsible for approving Mr. Bakambia's medical care. (ECF No. 1 at 14, 32-33; ECF No. 77 at 31.) Centurion is a private company that contracts with the DOC to provide medical and psychiatric services to prisoners. (ECF No. 152 at 2.)

[3] Kites are written requests or complaints that prisoners can send to various prison staff.

[4] No party produced the original discovery requests served on Defendants, but Defendants restated the requests in their responses, which Mr. Bakambia attached to his Motions without noting any errors.

and relevance. (ECF No. 189 at 3.) Notwithstanding those objections, Defendants stated they were unable to locate the order Ms. Oberembt referenced in the kites. Defendants produced medical records that appear to be responsive to the second request. (*Id.* at 17-19.) Mr. Bakambia objects to Defendants' response to his request for the Dr. Shicker order because he believes it should exist.

Request for Production 18 is subsumed under Request for Production 15, which the Court previously considered in addressing Mr. Bakambia's first Motion to Compel. (*See* ECF 211 at 14-16.) The Court ordered Defendants to conduct a search for these documents and either produce them or unequivocally inform Mr. Bakambia that no such documents were found. (*Id.* at 15-16.) Because the Court has already granted the relief Mr. Bakambia seeks with respect to Request for Production 18, the Second Motion is denied with respect to that request.

## B.      Request for Production 19

Request for Production 19 requests records showing the reason why Mr. Bakambia's neurologist appointment scheduled for June 7, 2022 did not occur. (ECF No. 189 at 4.) Defendants raised boilerplate objections based on vagueness and relevance. Notwithstanding those objections, Defendants stated they understood the request to reference January 7, 2022, not June 7, 2022, and produced a document in response. The document appears to be a notice sent by Centurion to MCF-Stillwater stating that Mr. Bakambia's January 7, 2022 appointment was cancelled. (ECF No. 189 at 32.) It states the reason for the cancellation as, "CLINIC CANCELLED APPT NOT NOTIFIED." Mr. Bakambia objects to Defendants' response on the ground that it is not responsive because it contradicts his own account of the events on January 7, 2022. (ECF No. 192 at 4.)

The Court rejects this argument. The document Defendants produced is plainly responsive to Mr. Bakambia's request. He may believe that it does not accurately depict what occurred or provide as much detail as it should, but that is not a ground for granting a motion to compel. *See Heaton v.*

*U.S. Postal Serv.*, No. 8:06-cv-2, 2007 WL 295609, at *1 (D. Neb. Jan. 29, 2007) ("Plaintiff is merely challenging the factual accuracies of defendant's responses … the court will not resolve factual challenges in a motion to compel.").

### C.      Request for Production 21

Request for Production 21 requests records Ms. Oberembt allegedly requested from Centurion because Centurion failed to timely schedule various neurologist appointments. (ECF No. 189 at 4-5.)   Defendants raised boilerplate objections based on vagueness, relevance, and argumentativeness.   Notwithstanding those objections, Defendants produced various documents, including medical records of requests for neurologist appointments at different times and the previously-discussed notice from Centurion to MCF-Stillwater stating that the Noran Neurological Clinic cancelled Mr. Bakambia's January 7, 2022 appointment. (ECF No. 161 at 10; ECF No. 189 at 21-32.)  Mr. Bakambia objects to Defendants' response on the ground that these documents are not responsive.  (ECF No. 192 at 5.)

The Court grants the Second Motion as to Request for Production 21 in part.  Mr. Bakambia seeks documents that Ms. Oberembt may have requested from Centurion in response to its alleged failures to timely schedule his appointments.  The documents produced by Defendants in discovery do not indicate that Ms. Oberembt made any such request or that Centurion provided the documents in response to her request.  Additionally, Defendants fail to explain in their response to the Motions why they believe these documents are responsive to Request for Production 21.  (ECF No. 201 at 3-4.)  The Court therefore directs Defendants to diligently search for and produce records related to Ms. Oberembt's requests for documents from Centurion in light of Centurion's alleged failure to schedule timely neurologist appointments for Mr. Bakambia that were: (1.) requested on June 21, 2023 and March 21, 2024; and (2.) scheduled for January 7, 2022.  If no such records exist,

Defendants must provide a statement attesting to that conclusion.

### D.     Request for Production 25

Mr. Bakambia's Third Motion seeks to compel Defendants to respond differently to Request for Production 25.  That Request seeks the following: (1.) "copies of the Transportation/Delegation Authorization form that officers signed on January 7, 2022 when they took [Mr. Bakambia] to Noran Neurology Clinic and when they had returned with him to MCF-Stillwater"; (2.) papers that nurses and officers signed on January 7, 2022 when Mr. Bakambia left and returned to MCF-Stillwater; and (3.) a "document signed by the captain or watch command approving" Mr. Bakambia's transportation on January 7, 2022.  (ECF No. 206-1 at 9.)  Defendants responded with boilerplate objections based on vagueness and relevance.  They also objected to the request insofar as it seeks "documents that contain private medical data" of other prisoners or documents that, if disclosed, "would endanger an individual's life or clearly endanger the security of any institution of the DOC or its population."  Notwithstanding those objections, Defendants produced two documents: (1.) the Delegation Authorization form Mr. Bakambia requested (ECF No. 206-1 at 6); and (2.) a "Daily Movement Report," which shows Mr. Bakambia's departure and return times when he went to the Noran Neurological Clinic on January 7, 2022 (*id.* at 11).  (ECF No. 206-1 at 9.)  Defendants also cited to a previously produced document titled, "Off-Site Scheduling Log Entry Form" (ECF No. 148 at 63), which details scheduling activities related to Mr. Bakambia's January 7, 2022 appointment at the Noran Neurological Clinic.  Mr. Bakambia objects to Defendants' response on the ground that nothing produced included papers that nurses signed on January 7, 2022.  (ECF 205 at 1-2.)

The Court denies the Third Motion.  The documents produced by Defendants are clearly responsive to Mr. Bakambia's request, and defense counsel told Mr. Bakambia that Defendants were

unable to locate any other responsive documents.  (ECF No. 206-1 at 1.)  The Court cannot compel Defendants to produce documents that do not exist.

### E.      Interrogatory 12

Interrogatory 12 asks Defendants to state whether, on Thursday, June 13, 2024: (1.) "staff activated an incident command system (ICS) regarding Mr. Bakambia's continued worsening migraine"; (2.) Mr. Bakambia "was escorted to health service"; (3.) once Mr. Bakambia was in "health service," "Dr. Craane sent RN Anderson to [the] Laundry area to retrieve Mr. Bakambia's migraine medication"; and (4.) it took RN Anderson "several hours to find [the migraine medication] because the way Officer Oliveras had rearranged Mr. Bakambia's property."  (ECF No. 189 at 14.) Defendants responded with boilerplate objections based on vagueness, relevance, and argumentativeness.  Notwithstanding those objections, Defendants responded that "Officer Oliveras did not rearrange Mr. Bakambia's property when he was released from segregation on June 12, 2024."  (*Id.*)  Mr. Bakambia objects to Defendants response because it only addressed the last portion of his interrogatory.

The Court grants the Second Motion as to Interrogatory 12 because Defendants' answer is incomplete.  Defendants argue the interrogatory only asked them "to admit that [Mr. Bakambia's] migraine medication could not be located during an ICS because Oliveras rearranged his property." (ECF No. 201 at 10.)  This is an oversimplification of a multi-part interrogatory.  The Court directs Defendants to answer the other subparts of Interrogatory 12, specifically whether on Thursday, June 13, 2024: (1.) staff activated an incident command system ("ICS") regarding Mr. Bakambia's continued worsening migraine; (2.) Mr. Bakambia was escorted to health service; (3.) Dr. Craane sent RN Anderson to the Laundry area to retrieve Mr. Bakambia's migraine medication after Mr. Bakambia arrived in health service; and (4.) it took RN Anderson several hours to find Mr.

Bakambia's migraine medication.  If Defendants are unable to answer some or all of these subparts, they may respond accordingly.

F.    **Interrogatory 22**

Interrogatory 22 asks Defendants to concede that on May 31, 2024, Ms. Oberembt told Mr. Bakambia: (1.) to disregard the delays in scheduling a follow-up appointment with his neurologist, Dr. Todd; (2.) that his follow-up appointment with Dr. Todd was approved; (3.) that it "sucks to live with pain"; and (4.) that follow-up appointments are "as needed, it didn't have to be requested." (ECF No. 189 at 11.)  Interrogatory 22 further asks Defendants to state when Ms. Oberembt told Mr. Bakambia about his upcoming neurologist appointment as reported in a kite dated May 30, 2024 and provide documentation to support their assertion, but only if Ms. Oberembt disputes Mr. Bakambia's allegation that the kite should have been dated May 31, 2024.  Defendants responded with boilerplate objections based on vagueness, relevance, and argumentativeness.  Notwithstanding those objections, they denied that Ms. Oberembt told Mr. Bakambia "it sucks to live with pain" and stated, "Ms. Oberembt does not recall the specific conversation referenced in the interrogatory; there were many times when Mr. Bakambia would speak to [Ms.] Oberembt when he would see her at the facility."  Mr. Bakambia objects to Defendants' response on the ground that it is evasive.  (ECF No. 192 at 5-6.)

The Court denies the Second Motion as to Interrogatory 22.  Defendants responded to the portions of the interrogatory they could address and attested to a lack of knowledge as to the rest. Since Defendants did not contest Mr. Bakambia's allegation that his conversation with Ms. Oberembt occurred on May 31, 2024, they did not have to state the date Ms. Oberembt believed the conversations occurred.  Mr. Bakambia may wish Ms. Oberembt had a better memory, or that her memory of events aligned perfectly with his, but that is not a basis to compel Defendants to answer

Interrogatory 22 differently.

### G.    Interrogatory 24

Interrogatory 24 asks Defendants to explain the DOC's "procedures or steps" involved in "removing Mr. Bakambia's Imitrex and other K.O.P.[5] from his property the day he was escorted to segregation on June 6, 2024 and brought them to him in segregation." (ECF No. 189 at 12.) The interrogatory also asks for the names of staff involved in that process and the procedure for packing and inventorying property of inmates transferred to segregation when those inmates have "K.O.P." medication. Defendants raised boilerplate objections based on vagueness, relevance, and argumentativeness. Notwithstanding those objections, Defendants answered, "staff did not remove [Mr.] Bakambia's Imitrext [sic] from his property when he was escorted to segregation on June 6, 2024." They further stated, "Generally speaking, the procedure for inventorying property of an inmate sent to segregation who has a K.O.P. medication is the same as inventorying the inmate's other property as described in Defendants' Answer and Supplemental Answer to Interrogatory No. 3." Mr. Bakambia objects to Defendants' response on the ground that it relies on generalities, does not provide the names requested, and conflicts with documents Defendants have produced and his own knowledge of the DOC's inventorying procedures. (ECF No. 192 at 6-8.)

The Court denies the Second Motion as to Interrogatory 24. The Court cannot compel different responses simply because Mr. Bakambia believes them to be false. *See Ditter v. Nebraska Dep't of Corr. Servs.*, No. , 2018 WL 2184454, at *10 (D. Neb. May 11, 2018) (quoting *Annabel v. Heyns*, 2014 WL 1207802, at *2 (E.D. Mich. Mar. 24, 2014)) ("The purpose of a motion to compel discovery is not to challenge the trustfulness of the response but rather to compel a party to *answer* the interrogatory."). Defendants answered Interrogatory 24 by disputing Mr. Bakambia's allegation

---

[5] "K.O.P." is not defined, but context suggests it means "keep on person".

that staff removed his Imitrex from his property.  It follows that there are no staff members' names to be produced.  Defendants also provided an answer regarding the process for inventorying the property of inmates with K.O.P. medication who are transferred to segregation.  Whether these answers are true or false is not for the Court to decide in ruling on a motion to compel.

### H.    Interrogatory 25

Interrogatory 25 states a lengthy description of performance benchmarks associated with Ms. Hart's job as Director of Health Services[6] and Ms. Oberembt's job responsibilities.  (ECF No. 189 at 13.)  It then states various times when Ms. Oberembt allegedly told Mr. Bakambia his follow-up appointments with his neurologist were approved and scheduled, but nonetheless did not occur.  It further alleges Ms. Oberembt answered "n/a" to a question on a form asking why Mr. Bakambia's appointment did not occur on time.  Finally, the interrogatory asks, "Which of those practices described above qualifies as below standards, fully meets standards and exceeds standards?" Defendants raised boilerplate objections based on vagueness, argumentativeness, and relevance. Notwithstanding those objections, Defendants answered that "there was no follow-up ordered on June 21, 2023, for [Mr.] Bakambia to see a neurologist specifically," and cited to supplemental answers to Interrogatories 14 and 17.  Defendants later supplemented their answer and stated, "Following the appointment on March 21, 2024, Mr. Bakambia had follow-ups on May 24, 2024, and September 13, 2024.  See documents previously produced identified as DOC 031-032, 040-042, 260, 336, 351-355."  (ECF No. 189 at 36-37.)  Mr. Bakambia objects to Defendants' response on the ground that it is not responsive to the entire interrogatory.  (ECF No. 192 at 8-9.)[7]

---

[6] Mr. Bakambia cites a document signed by Ms. Reid, but Ms. Hart is her successor in that same position.

[7] Mr. Bakambia also objects to the informal method Defendants initially used to try to respond to the interrogatory, their alleged delay in providing a formal response, and the fact that Sheri Short signed the formal supplemental interrogatory response with a different job title than she

The Court denies the Second Motion as to Interrogatory 25 because Defendants' response was adequate. A party adequately responds to an interrogatory when she disputes the factual premise that the interrogatory asks her to assume. *See WFC Holdings Corp. v. United States*, No. 07-cv-3320 (JRT/FLN), 2009 WL 10678229, at \*1 (D. Minn. Mar. 30, 2009) (denying motion to compel answers to interrogatories asking respondent to "assume facts that [respondent] contends are in dispute"); *Stinson v. Sirleff*, No. 92-cv-6059 (SWK/MHD), 1994 WL 406344, at \*1 (S.D.N.Y. Aug. 1, 1994) (When "defendants object to some interrogatories as assuming a fact that is disputed by the defendant …, the proper response in this case is for the defendant to state, in answer to the interrogatory, his denial of any assumed fact."). Interrogatory 25 requires Defendants to assume Mr. Bakambia's allegations concerning the non-occurrence of his various follow-up visits are true. Defendants responded by disputing that factual premise. Defendants' response was therefore adequate.

## ORDER

Based on the foregoing, and on all the files, records, and proceedings here, **IT IS HEREBY ORDERED THAT**:

1. Plaintiff Marc Amouri Bakambia's *Second Motion to Compel Discovery Disclosures* (ECF No. 188) is **GRANTED IN PART** and **DENIED IN PART** as follows:

   a. Defendants Alexandria Hart, Christine Oberembt, and Michael Oliveras shall conduct a diligent search and produce documents responsive to Request for Production 21. If no responsive documents are located, Defendants must provide a statement attesting to that conclusion.

---

had previously listed. (*Id.* at 9-10.) Mr. Bakambia cites no authority that prohibits Defendants from *supplementing* interrogatory responses informally, and the Court is not aware of any. He also fails to identify a remedy or explain how the delayed formal response or Ms. Short's differing job titles prejudice him in any way. The Court thus denies the Second Motion insofar as it advances these objections.

b.   Defendants shall provide an answer to Interrogatory 12 that states whether, on Thursday, June 13, 2024: (1.) staff activated an incident command system ("ICS") regarding Mr. Bakambia's continued worsening migraine; (2.) Mr. Bakambia was escorted to health service; (3.) Dr. Craane sent RN Anderson to the Laundry area to retrieve Mr. Bakambia's migraine medication after Mr. Bakambia arrived at health service; and (4.) it took RN Anderson several hours to find Mr. Bakambia's migraine medication.  If Defendants lack an adequate basis to answer all or some of these requests, they may respond accordingly.

c.   The Motion is denied in all other respects.

2.   Mr. Bakambia's *Third Motion to Compel Discovery Disclosures* (ECF No. 203) is

**DENIED**.

Dated: May 18, 2026

*s/ Dulce J. Foster*
Dulce J. Foster
United States Magistrate Judge